58 CCPA

**Application of Harmon M. GARFINKEL.**

**Patent Appeal No. 8423.**

United States Court of Customs
and Patent Appeals.

Feb. 18, 1971.

Clinton S. Janes, Jr., Corning, N. Y., attorney of record, for appellant.

S. Wm. Cochran, Washington, D. C., for the Commissioner of Patents; Joseph F. Nakamura, Washington, D. C., of counsel.

Before RICH, ALMOND, BALDWIN and LANE, Associate Judges, and DAVIS, Judge, United States Court of Claims, sitting by designation.

ALMOND, Judge.

This is an appeal from the decision of the Patent Office Board of Appeals affirming the rejection of claims 11–16 of appellant's application entitled "Strengthened Glass Article and Method." [1]  No claims have been allowed.

The invention relates to the strengthening of lithium silicate ($Li_2O$–$SiO_2$) and sodium silicate ($Na_2O$–$SiO_2$) glasses containing up to 12% CaO and 5–25% $Al_2O_3$ and/or $ZrO_2$.  The glasses are contacted at an elevated temperature, but below the strain point of the glass, with a source of silver ions for a period of time sufficient to cause the replacement of the original lithium and/or sodium within the glass surface layer with the larger silver ions on an ion-for-ion basis. The stuffing of the larger silver ions into the surface of the glass causes compressive stresses to be developed in situ, since the glass volume cannot increase inasmuch as the exchange temperature is too low to allow viscous flow and molecular rearrangement therein to release the stresses built up.

Acknowledging that this type of treatment has been known for alkali metal silicate glasses, particularly soda-lime-silica glass ($Na_2O$–$CaO$–$SiO_2$) in which the sodium ions are replaced with potassium ions, appellant states that the crux of his invention is the discovery that when silver is utilized in conjunction with lithium silicate and sodium silicate glasses having up to 12% CaO and 5–25% $Al_2O_3$ and/or $ZrO_2$, the resulting article exhibits a severalfold improvement in mechanical strength which is re-

---

1. Serial No. 443,651 filed March 29, 1965 as a continuation-in-part of application serial No. 181,886 filed March 23, 1962.

tained intact even after substantial surface abrasion.

Illustrative are claims 11 and 14:

11. An alkali silicate glass article which exhibits substantially increased strength after being subjected to surface abrasion, said article containing ions of at least one alkali metal selected from the group consisting of lithium and sodium and silver and having a surface compressive stress layer of a depth of at least 5 microns, the concentration of the silver ions being greater in said surface layer than in the interior portion of said article and the concentration of the alkali metal ions being greater in the interior portion of said article than in the surface layer thereof, said differences in concentration creating the compressive stress in said surface layer, the interior portion of said glass article having a composition consisting essentially of about 5–25 mole percent $Li_2O$ and/or $Na_2O$, at least one modifying oxide in the indicated proportion in weight percent selected from the group consisting of up to 12% CaO and 5–25 $Al_2O_3$ and/or $ZrO_2$ and $SiO_2$.

14. A method for making a glass article which exhibits substantially increased strength after being subjected to surface abrasion which comprises forming the article from an alkali silicate glass consisting essentially of about 5–25% mole percent $LiO_2$ and/or $Na_2O$, at least one modifying oxide in the indicated proportion in weight percent selected from the group consisting of up to 12% CaO and 5–25% $Al_2O_3$ and/or $ZrO_2$ and $SiO_2$, contacting said glass article with a material containing silver ions at an elevated temperature but below the strain point of the glass, maintaining this contact for a sufficient length of time to cause the exchange of the lithium and/or sodium ions from the surface of the glass with the silver ions from the contacting material thereby introducing compressive stresses in a surface layer on the glass article, the depth of such

compressively stressed layer being at least 5 microns.

Claims 12 and 15 depend from claims 11 and 14, respectively, and limit the alkali metal oxide to $Li_2O$. Claims 13 and 16 also depend from claims 11 and 14, respectively, and limit the $SiO_2$ content of the glass to about 55–75%.

The references relied upon are:

| | | |
|---|---|---|
| Jones | 2,344,250 | March 14, 1944 |
| Ross et al. (Ross) | 2,904,432 | September 15, 1959 |
| Weber | 3,218,220 | November 16, 1965 |
| Chisholm et al. (Chisholm) | 3,287,201 | November 22, 1966 |

Kistler, "Stresses in Glass Produced by Non-Uniform Exchange of Monovalent Ions," Journal of the American Ceramic Society, Vol. 45, No. 2, February 1962, pages 59–68.

Jones discloses a method of improving the optical properties of an alkali silicate glass by contacting the glass with a silver compound at an elevated temperature below the softening point of the glass for a period of time sufficient to exchange silver ions for alkali metal ions in the surface of the glass to an average depth of 12 microns.

Ross discloses a method of producing a photographic image in a silicate glass of the soda-lime-silicate type by contacting the glass with a source of silver or copper ions at an elevated temperature to cause the exchange of the silver or copper ions for the alkali metal ions in the glass surface.

Weber discloses the chemical strengthening of sodium silicate glass articles through the large-ion-for-small-ion type exchange at an elevated temperature below the strain point of the glass. It is suggested that the compression layer penetrate below the deepest crack or stress concentration in the glass article.

Chisholm discloses a two-step ion exchange treatment for strengthening alkali metal silicate glasses. The first step involves exchanging a smaller diameter metal ion, such as lithium, for the larger alkali metal ions in the glass. The second step involves exchanging larger metal ions, including silver, for the lithium ions in the glass surface.

Kistler discloses a chemical strengthening process similar to that of Weber in that compressive stresses are induced into the surface of the glass by exchanging larger ions for the smaller ions in the glass. Kistler states that experiments were made in an attempt to diffuse silver ions into a glass, but that silver "proved to be unsuitable for the technique used since it crept up over the glass disk * * *." However, Kistler states that "[t]here is already extensive literature on the diffusion of silver into glass and it would be interesting to study it by the present method * * *." The glasses used by Kistler are disclosed by him as having from 1–5.12% $Al_2O_3$, and he suggests the use of lithium silicate glasses as well as soda-lime-silica glasses.

The examiner rejected claims 11–16 under 35 U.S.C. § 103 as being unpatentable over Kistler or Chisholm each alone or considered with Weber, Ross, and Jones. The board affirmed. In regard to the rejection utilizing Kistler as the primary reference, the board stated:

The Kistler disclosure of the creation of compressive stress in surface layers of glass by the replacement of alkali metal ions in that surface by alkali metal ions of greater dimensions is not restricted merely to the replacement of sodium ions with potassium, but extends to other pairs of alkali metals or of an alkali metal with silver * * *.

We do not interpret the Kistler publication as suggesting the inoperativeness of silver as a replacement ion. Kistler indicates that silver was unsuitable for his particular technique employed for the measurement of stresses induced by ion substitution, but this was the observation limited to this technique. Kistler indicated that there already was extensive literature on the diffusion of silver into glass. The Ross et al. and Jones patents support this statement.

Appellant contends that the reasoning of the board overlooks the crux of his invention, namely, the tremendous increases in abraded strength obtained.

The essence of appellant's argument is summarized in his brief when he states:

The most that can be garnered from the disclosure [of the references cited] is that silver ion exchange in alkali metal silicate glasses is possible. Such a disclosure is far removed from the discovery that extremely high *abraded* strengths can be imparted to $Li_2O$ and/or $Na_2O$–$SiO_2$ glasses containing specific amounts of CaO and/or $Al_2O_3$ and/or $ZrO_2$ through silver ion exchange.

Since we will affirm the rejection utilizing Kistler as the primary reference, we find it unnecessary to consider the rejection utilizing Chisholm in that capacity and the question of the sufficiency of appellant's Rule 131 affidavit to overcome Chisholm. We agree with the board that Kistler, when taken with Jones, Ross, and Weber, rendered the claimed invention obvious to one of ordinary skill in the art. Kistler discloses that an improved strength results from his treatment of glass particles. The glasses disclosed in Kistler are of the same type used by appellant and Kistler suggests the use of silver as the replacement ion, as do Jones and Ross.

While Kistler indicates that some strength is lost when glass articles treated by his process are handled "in careless fashion," these articles still have an improved strength over untreated articles. Appellant alleges that, in comparison, his treatment of the glasses claimed with silver ions produces glass articles considerably stronger after rough handling or abrading, and that such improved properties amount to new and unexpected results. The same argument was made in In re Garfinkel, Cust. & Pat.App., 437 F.2d 1000 (No. 8421), decided concurrently herewith. There we observed that there was no factual support, by way of comparative tests or otherwise, for appellant's allegations. The same is true here. As in that case, since appellant chose to predicate unobviousness on unexpected superiority and since there is no evidence of such

superiority, we are not persuaded of unobviousness.

The remaining issues are also similar to those presented in In re Garfinkel (No. 8421), and we will resolve them in the same manner although there are several distinctions which must be mentioned. As in No. 8421, the examiner prodded appellant into filing a Rule 131 affidavit for the sake of "appellate convenience and administrative efficiency." The board found the affidavit insufficient, reasoning that Kistler is a statutory bar since appellant is not entitled to the benefit of the filing date of appellant's earlier application, serial No. 181,886 filed March 23, 1962. The board stated that the earlier application "does not support the appellant's claims, the disclosure with respect to silver ions exchange being associated merely with a desire for 'special effects' of an unspecified character." We cannot agree with the reasoning of the board in this regard. The parent application clearly discloses the use of silver as the replacement ion with the claimed glasses, and enables one of ordinary skill in the art to make the ion exchange by the processes disclosed. The only "special effects" recited in the present claims which must find support in the parent application is that the depth of the compressively stressed layer be at least 5 microns. The parent application discloses forming a compressively stressed layer to any effective depth "greater than that penetrated by surface abrasion" and that it may easily be done to a depth as much as "a hundred microns or more," which in our opinion supports the depth limitation now claimed.

However, as in In re Garfinkel (No. 8421), we will treat the information in Kistler as prior art because appellant does so. We understand from the following statement in appellant's brief that he has no serious objection to the treatment of the information in Kistler as prior art as to him:

Therefore, although several extraneous issues or, perhaps more accurately, several nice points of law have been thrust upon the prosecution of the instant application which have, unfortunately, tended to cloud the prosecution thereof and make it unnecessarily complex, it is respectfully submitted that the controlling issue to be tried is whether the results obtained by the Appellant would have been expected by one of ordinary skill in the art from reading the references relied upon by the Examiner and the Patent Office Board of Appeals. Were the results discovered by the Appellant so unexpected and such an improvement over those recited in the prior art to constitute a difference in kind rather than merely in degree?

Finally, appellant alleges that the analysis of 5.12% $Al_2O_3$ by Kistler is erroneous. An affidavit was submitted to show that the glass Kistler used actually contained only about 2% $Al_2O_3$. In the present case the 5.12% disclosed by Kistler is within the range of $Al_2O_3$ claimed by appellant (i. e., 5–25%). We agree with the board that Kistler's disclosure would teach one of ordinary skill in the art to use up to 5.12% $Al_2O_3$ since the error, if it exists, is not apparent or obvious from reading the publication. See, In re Yale, 58 CCPA, 434 F.2d 666 (1970). Besides as pointed out in In re Garfinkel (No. 8421), in the absence of proof of new and unexpected results or other evidence of unobviousness, the disclosure of Dr. Kistler of glasses containing small amounts of $Al_2O_3$ made obvious the use of glasses containing $Al_2O_3$ irrespective of the percentage.

Therefore, we affirm the decision of the board.